5 F.3d 230
 ESTATE OF Damon L. STARKS, et al., Plaintiffs-Appellees,
v.
Donald L. ENYART, Thomas I. Black, and Thomas E. Schaffer,
individually and as Officers of the Indianapolis
Police Department, Defendants-Appellants.
 No. 93-1015.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 9, 1993.
Decided Sept. 14, 1993.
 
 Hamid Kashani (argued), Indianapolis, IN, for plaintiffs-appellees.
 Michael V. Gooch, John S. Beeman, Donald L. Centers (argued), Edward R. Hannon, Harrison & Moberly, Indianapolis, IN, for defendants-appellants.
 Before CUDAHY, FLAUM and KANNE, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 On the evening of November 1, 1989, Damon Starks stole a taxicab and drove it to a nearby Taco Bell. Three uniformed police officers quickly surrounded the cab and confronted Starks. Instead of submitting to the authorities, Starks attempted to escape. As Starks drove toward Officer Black, all three officers opened fire and killed him. The plaintiffs sued the officers under 42 U.S.C. Sec. 1983 for violating Starks' civil rights. The district court denied the defendants' motion for summary judgment based on a qualified immunity defense, and the officers appeal.
 
 I.
 
 2
 For the purpose of this appeal, we accept the plaintiffs' version of the facts, and we draw all reasonable inferences in their favor. Knox v. McGinnis, 998 F.2d 1405, 1409 (7th Cir.1993). At approximately 9:00 p.m. on November 1, the Indianapolis Police Department received a report of a stolen Yellow Cab and issued a radio broadcast describing the car and its last known location. Sergeant Enyart, driving alone in his marked police car, spotted the cab and followed it to a nearby Taco Bell parking lot. Starks parked the stolen cab on the passenger side of another car where a civilian witness, David Craig, was sitting in the back seat. Enyart parked his police car six to eight feet behind the cab. Meanwhile, Officers Black and Shaffer had heard the broadcast of Enyart's sighting of the cab and pulled into the Taco Bell parking lot shortly after Enyart and the cab arrived. They parked their marked police car behind Enyart's car. The red flashing lights on one of the two police cars were engaged.
 
 
 3
 All three police officers were in uniform. Officer Black walked around the Craigs' car to the front of the Yellow cab. Officer Shaffer walked to the rear of the cab on the driver's side. Sergeant Enyart walked to the driver's door of the cab, ordered Starks to get out of the cab, and reached down and opened the door approximately six inches. Starks grabbed the door with both hands, slammed it shut, and locked all of the doors to the cab. Starks asked Enyart what he wanted, and Enyart again ordered him to exit the cab. Instead, Starks put the car in reverse and slowly backed the cab into Enyart's police car. Then he drove forward and toward the right, but his escape path was blocked by a utility pole. Starks reversed again, edging the rear of the cab to the left to improve the angle of the cab to the pole. The cab came close to, but did not strike, the Craigs' car. At that point, the stolen cab was approximately ten feet from the utility pole. Starks put the cab in drive and floored the accelerator. Apparently, the angle of the cab now would have permitted Starks to clear the pole and drive away, had he not been apprehended.
 
 
 4
 When Starks pulled forward for the first time, Officer Black was behind the utility pole. More importantly, Craig testified that Black remained behind the pole until Starks had already started forward the second time, at a high rate of speed. Then Black moved out from behind the pole, jumping to a position in front of the moving cab. All three officers fired their weapons. Starks died as a result of his gunshot wounds.
 
 II.
 
 5
 The denial of qualified immunity is an appealable "final decision" to the extent that the decision depends on an issue of law. Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). If, however, we cannot decide the qualified immunity question without resolving an issue of disputed fact, then we lack jurisdiction over the question. Hill v. Shelander, 992 F.2d 714 (7th Cir.1993). Therefore, if the record read favorably to the plaintiff supports a version of the facts which would not entitle the defendants to immunity, we will dismiss the interlocutory appeal for lack of jurisdiction. Id. at 716, 717-18.
 
 
 6
 Under the doctrine of qualified immunity, police officers are shielded from suit for damages if "a reasonable officer could have believed [the action taken was] lawful, in light of clearly established law and the information the officers possessed." Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). To determine whether police officers have used excessive force in effecting a seizure, we apply a Fourth Amendment objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). An officer's actions are considered objectively unreasonable " 'only if the right allegedly violated is clearly established in a sufficiently particularized sense at the time of the actions at issue.' " Knox, 998 F.2d at 1409 (quoting Hall v. Ryan, 957 F.2d 402, 404 (7th Cir.1992)). Although it is not necessary that a prior case address the precise factual situation confronting the officer, the unlawfulness of the officer's action should be clear in light of pre-existing law. Rice v. Burks, 999 F.2d 1172 (7th Cir.1993); McDonald v. Haskins, 966 F.2d 292 (7th Cir.1992). A police officer may use deadly force only to seize a fleeing felon who has committed a violent crime or who presents an immediate danger to the officer or others. Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985) ("Deadly force may be used if necessary to prevent escape, ... if the suspect threatens the officer with a weapon, or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, ... and if, where feasible, some warning has been given."); see also Tom v. Voida, 963 F.2d 952, 962 (7th Cir.1992). The parties dispute whether Officer Black moved out from behind the utility pole before or after Starks drove the cab forward. The defendants argue that, even under the plaintiffs' version of the facts, Black deserves qualified immunity because part of his job is to risk his life as he attempts to seize and arrest fleeing felons. Even if he moved in front of the accelerating cab, they claim, Black behaved reasonably to stop a fleeing felon and faced immediate danger because Starks drove toward him in a reckless, speeding manner.
 
 
 7
 Police officers do place their own lives at risk in the course of performing their job, and we agree with Black's position that they may use deadly force to protect themselves, even after choosing a risky course of action to stop a fleeing felon. A police officer who pursues a felon into a dark alley, for example, or who engages in a high-speed car chase, has put his own life at risk. If the suspect he is pursuing threatens him with a weapon, he may use deadly force and, in most cases, will receive qualified immunity for his actions. The situation here, as the district court found, is more difficult. The defendants knew that the underlying crime was not accomplished violently. They also knew that Starks was attempting to escape in the face of a clear show of authority by the police. But his escape attempt did not involve menacing a police officer or civilian with a weapon--at least not until Black stepped into the path of a car that had just begun to accelerate quickly. The defendants' argument that Starks was operating the cab recklessly does not comport with the plaintiffs' version of the facts. Accepting the plaintiffs' version, as we must at this juncture, his attempt to maneuver the cab was not so reckless that, apart from Black's appearance at the front of the cab, police officers could reasonably fear for their safety or the safety of the community. Therefore, it cannot be concluded that a reasonable officer could believe that Starks fit the description of a fleeing felon against whom deadly force could legitimately be used.
 
 
 8
 At argument, the plaintiffs conceded that if an officer was faced with a fleeing felon driving toward him, the officer could justifiably shoot the driver. In other words, if Black had been in front of the vehicle before the car started forward, all three officers could have fired and would be protected by qualified immunity. The essential dispute, therefore, concerns whether Black moved from behind the pole before or after the cab started forward. The plaintiffs further conceded that Black could reasonably have moved out from behind the pole after the cab started forward if Starks had had time to stop the cab before striking him. The alleged unreasonableness of Black's action, according to the plaintiffs, comes from moving out from behind the pole without leaving Starks time to stop the car. For the limited purpose of this appeal, we agree with this assessment.
 
 
 9
 The facts, read favorably to the plaintiffs, cannot support a reasonable officer's belief that it was permissible to use deadly force to seize Starks. The key dispute for the factfinder will be whether Black stepped in front of Starks' rapidly moving cab, leaving Starks no time to brake. If he did, then Officer Black would have unreasonably created the encounter that ostensibly permitted the use of deadly force to protect him, because the decedent would have been unable to react in order to avoid presenting a deadly threat to Black. On the other hand, if Black was in the path of the car before the car started forward or if the factfinder concludes that Starks could have braked but chose not to, then the three defendants reasonably responded to Starks' acceleration toward Black.[1] Starks would have threatened the life of a police officer, and reasonable officers could believe that the use of deadly force was appropriate.
 
 
 10
 Enyart's and Shaffer's conduct deserves further and somewhat different examination from Black's actions because, although Enyart and Shaffer deserve qualified immunity if Black does, the converse is not necessarily true. After all, even if Black unreasonably leaped in front of the cab, Starks then presented a threat of serious physical harm to Black. Enyart and Shaffer had not done anything wrong or unreasonable, so they arguably deserve qualified immunity for the use of deadly force to protect Black. Black cannot be granted immunity because, again taking the plaintiffs' version of the facts, his own unreasonable action prompted the danger he faced. Police officers who unreasonably create a physically threatening situation in the midst of a Fourth Amendment seizure cannot be immunized for the use of deadly force.
 
 
 11
 One might argue that Enyart and Shaffer should be immunized in any case because they are not arguably unreasonable in the same way Black was. They did nothing to create the threat of serious physical harm; they simply found themselves in a situation where a fellow officer opened himself up to a life-threatening danger. To grant them immunity would not encourage unreasonable conduct, but to deny it requires them to stand trial for protecting a fellow officer who may have been killed. While the foregoing analysis has its appeal, it ignores a crucial aspect of Damon Starks' seizure.
 
 
 12
 As the Supreme Court has stated, no seizure is more intrusive than one effected by deadly force. Garner, 471 U.S. at 9, 105 S.Ct. at 1700. To determine whether the force used to effect a particular seizure is reasonable, we balance the nature and quality of the intrusion on the individual's rights against the "countervailing governmental interests at stake." Graham, 490 U.S. at 395, 109 S.Ct. at 1871. We permit deadly force to be used against violent fleeing felons in part because they have forfeited the right to a less intrusive seizure by their actions. Fleeing felons who have not resorted to violence are accorded less intrusive seizures. If a fleeing felon is converted to a "threatening" fleeing felon solely based on the actions of a police officer, the police should not increase the degree of intrusiveness. In other words, we have no countervailing governmental interest in unreasonable police conduct that would justify a greater intrusion on the individual's rights.
 
 
 13
 In Brower v. County of Inyo, 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), the Supreme Court held that, in order for a Fourth Amendment seizure to occur, the detention or taking must be willful. Id. at 596, 109 S.Ct. at 1381 ("Violation of the Fourth Amendment requires an intentional acquisition of physical control.") Therefore, the Court hypothesized, there is no seizure if a fleeing suspect loses control of his car and crashes, but there is a seizure if the police car "pulled alongside the fleeing car and sideswiped it, producing the crash...." Id. at 597, 109 S.Ct. at 1381. By analogy, the threat of danger presented by the fleeing felon must be willful in order to warrant the use of deadly force in response. If a felon escaping in a car aims for a police officer, then he may be shot to protect the life of the officer. But imagine instead a fleeing felon whose car collides with another object and careens out of control toward an officer, while the felon throws his hands up in front of his face or has been tossed into the back seat of the car. May a police officer shoot the felon who is involuntarily propelled toward a fellow officer? The Brower Court found that, "if Brower had had the opportunity to stop voluntarily at the roadblock [into which he crashed], but had negligently or intentionally driven into it," the officers who set up the roadblock would not be liable for his death. Id. at 599, 109 S.Ct. at 1383. Similarly, Starks would be liable for threatening Black's life only if he voluntarily drove the car at Black. If we assume, as we were required to in analyzing Black's defense, that Starks had no time to brake after Black unreasonably jumped in front of the car, then it is as if Starks were being involuntarily hurled toward Black. Enyart and Shaffer cannot be immunized in these circumstances because, under the facts viewed most favorably for the plaintiffs, they applied the use of deadly force to stop an involuntary action by the decedent.
 
 
 14
 We DISMISS the appeal for lack of jurisdiction and REMAND the case to the district court.
 
 
 
 [1]
 Whether the cab presented a threat of serious physical harm has not been conclusively established in any event. First, Black moved out of the path of the car without being struck. Second, it is unclear how fast the cab was moving, even with a floored accelerator, from a full stop after less than ten feet. These facts should also be settled by the factfinder