*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0056p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

PEGGY SIGLEY,

        *Plaintiff-Appellant,*

    *v.*

CITY OF PARMA HEIGHTS, et al.,

        *Defendants-Appellees.*

No. 05-3055

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 03-00595—Donald C. Nugent, District Judge.

Argued: October 25, 2005

Decided and Filed: February 10, 2006

Before: KEITH and BATCHELDER, Circuit Judges; OBERDORFER, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Nicholas A. DiCello, SPANGENBERG, SHIBLEY & LIBER, Cleveland, Ohio, for Appellant. John T. McLandrich, MAZANEC, RASKIN & RYDER, Cleveland, Ohio, for Appellee. **ON BRIEF:** Nicholas A. DiCello, Dennis R. Lansdowne, Peter J. Brodhead, SPANGENBERG, SHIBLEY & LIBER, Cleveland, Ohio, for Appellant. John T. McLandrich, James A. Climer, Frank H. Scialdone, MAZANEC, RASKIN & RYDER, Cleveland, Ohio, for Appellee.

    KEITH, J., delivered the opinion of the court, in which OBERDORFER, D. J., joined. BATCHELDER, J. (pp. 11-12), delivered a separate dissenting opinion.

---

**OPINION**

---

    DAMON J. KEITH, Circuit Judge. This is a 42 U.S.C. § 1983 action for the use of deadly force arising out of Detective Wayne Mockler's ("Mockler") fatal shooting of Daniel P. Davis, dec'd ("Davis") in the back, as he was attempting to flee an undercover drug bust. Plaintiff-Appellant Peggy Sigley ("Sigley" or "Plaintiff"), Davis' mother and the administratix of Davis' Estate, sued the City of Parma Heights and Mockler asserting constitutional claims under 42 U.S.C. § 1983 and supplemental claims under the Ohio constitution and Ohio tort law. After discovery, the district

---

[*]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

court entered summary judgment in favor of the Defendants holding that Mockler acted reasonably, as a matter of law. Sigley appealed. The central issue on appeal is whether the district court erred when it granted Defendants' motion for summary judgment holding that there were no genuine issues of material fact and that the Defendants were entitled to a judgment as a matter of law on Plaintiff's Fourth Amendment excessive force claim. We find there are genuine issues of material fact regarding whether Davis posed a significant threat of death or serious injury to Mockler or others. For the foregoing reasons, we **REVERSE** the district court's granting of summary judgment and **REMAND** for trial on Sigley's federal constitutional claims.

## I.     BACKGROUND

In 2001, the Parma Heights Police Department ("Parma Heights" or "police department") began investigating Davis, who was thought to be a high-level ecstasy dealer in Parma Heights. The investigation began when the police found Matthew Benedict ("Benedict") in possession of ecstasy, which he obtained from Davis. The police asked Benedict to become a confidential informant and cooperate in a controlled buy-bust operation to arrest Davis.

In February 2002, Davis contacted Benedict to tell him that he had ecstasy for sale. At the urging of the police, Benedict arranged a controlled purchase of five hundred dollars worth of ecstasy pills from Davis. Benedict agreed to meet Davis on March 9, 2002, in the parking lot behind Topps Bar and Grill in Parma Heights.

On March 9, 2002, Mockler assembled a team of six Parma Heights police officers to assist in the undercover operation. The plan was to position Benedict's vehicle in the parking lot behind Topps Bar and Grill and wait for Davis to arrive. Before the controlled bust, Davis called Benedict and expressed concerns over meeting in Parma Heights. Following some negotiations regarding where the meeting should take place, Davis finally agreed to meet Benedict in the parking lot behind Topps Bar and Grill.

Benedict arrived on the scene at approximately seven o'clock p.m. When Benedict arrived, Davis was already parked in the lot, preventing the police from selecting the precise location for the transaction. Patrolman Jackson, an undercover officer, was riding in the Jeep with Benedict. Patrolman Jackson was wearing a concealed recording device.

When Benedict parked, his vehicle and Davis' vehicle were facing in opposite directions and positioned so that their drivers' side windows were side-by-side and about three feet apart. Benedict and Davis exchanged five hundred dollars in cash, and a black film cannister containing twenty-five ecstasy pills. When the transaction was complete, Patrolman Jackson signaled the other officers to arrest Davis.

Two unmarked police cars pulled up to block Davis' vehicle. One car was driven by Detective Scharschmidt and Patrolman Mehlman ("Mehlman") was a passenger. They pulled their car behind Davis' vehicle. Mehlman told Scharschmidt to stop the vehicle short of blocking Davis' vehicle because Benedict's headlights were blinding him. Mockler drove the other car, which blocked Davis. In short, Detectives Scharschmidt and Mockler attempted to box in Davis to prevent him from escaping from the parking lot. Officers Walls and Kravanis were driving marked police cruisers that blocked the ingress and egress to the parking lot.

When the police cars came to a stop, Patrolman Mehlman exited his car and approached the passenger side of Davis' vehicle. Mockler exited his vehicle with his weapon drawn. He positioned himself in front of Davis' car, between his vehicle and Davis' vehicle. Mockler and Mehlman, both, dressed in plain clothes, identified themselves. Mehlman yelled "Parma Heights police," "stop police," and "you're under arrest." Davis began to yell "it's a bust" and attempted to flee the scene. (J.A. at 130, 135).

Davis backed his car up enough to pull out of his current position and free himself from the block created by Mockler and Scharschmidt's vehicles. While backing up, Davis' car made contact with Mehlman's hand. Mehlman stated that he sustained a bruise for which he was given an ice pack. (J.A. at 213).

The remaining facts in this case are highly disputed.

## A.      Mockler's Version of the Facts

Mockler claims that he was standing directly in front of Davis' car, with his gun drawn, before Davis started to reverse and accelerate. (J.A. at 136-37). As the car began to reverse, Officer Mockler allegedly stepped east to realign himself with the vehicle and position himself to fire upon the vehicle if it continued to back up and pose a serious risk to the officers behind Davis' vehicle. (J.A. at 136).

Davis, however, stopped his backward movement and accelerated quickly forward. In his deposition, Mockler later testified that he began running east, with his back to Davis' car, to a nearby fence at the edge of the parking lot to avoid Davis' vehicle. (J.A. at 137, 140). He alleges that when he began running, he was in front of Davis' vehicle. His focus was on getting to safety and avoiding the danger of Davis' vehicle. He claims he wanted to get to the fence to avoid Davis and put the action in front of him.

Mockler realized he could not make it to the edge of the lot quickly enough to avoid the vehicle. Davis' vehicle was on top of him and turning into his path. Mockler claims that this put him in danger of being hooked by the vehicle. (J.A. at 141). Mockler estimates that Davis' vehicle was traveling at approximately 30 to 40 m.p.h.. (J.A. at 142). Mockler fired one shot, as the car was swerving into him. At the time the shot was fired, Davis was leaning into the steering wheel toward the passenger's side, away from Mockler. (J.A. at 143).

Mockler indicated that as he fired, he "jumped out of the way, pulled one round, just jumped out of the way and twisted." (J.A. at 144). He claimed that he was jumping back and twisting in the air at the same time. He stated that he fired through Davis' open driver's side window and did not have time to aim. Mockler believed that if he had not fired, he would have been run over, sucked under the car and killed, and alleges that he fired in self-defense. (J.A. at 121, 133).

Mockler also alleges that Officer Kravanis, who was approaching the scene to effectuate the arrest, was in danger of being rammed by Davis' speeding vehicle in his effort to escape. (J.A. at 241).

## B.      Sigley's Version of the Facts

In the Plaintiff's version of the facts, she contends that Mockler chased after her son as he drove away from the scene, pointed his gun down into Davis' open driver's side window, and shot him in the back. (J.A. at 326) (Plaintiff's Br. at 4).

Specifically, Plaintiff alleges that Mockler sprang from his vehicle with his weapon drawn and moved to the area near his unmarked vehicle's front right headlight. (J.A. at 135, 136). Davis backed up and repositioned his vehicle so that he could travel forward (East/Northeast) and drive around Mockler and his vehicle. As Davis' car passed him, Mockler shot Davis in the back though his open driver's side window. (J.A. at 145). In his deposition, Mockler recounted that "And the car's [sic] going past me, and I'm just coming up and fired." (J.A. at 144). Mockler was less than two and one half feet from the car. (J.A. at 82).

Immediately after the shooting, the police took a statement from Benedict. In his deposition explaining his statement, Benedict stated "whoever it was . . . who pointed a weapon down and into the window and when you heard a pop was running alongside of the Davis vehicle." (J.A. at 330-331). Benedict testified that the only thing he was unsure of was which officer was alongside Davis' car. (J.A. at 91). He stated that prior to the officer firing that it "appeared that he was off towards his driver's side, maybe a little bit behind." (J.A. at 95). Benedict further stated that "[Davis] paused for about a second and then stepped on the pedal and swerved off to the right and tried to get around a couple of officers." (J.A. at 89).

The autopsy revealed that Davis was shot in his mid-back, just left of the midline. (J.A. at 396). Upon being shot, Davis immediately lost control of his car and crashed into several parked cars located just several feet away. Davis died of exsanguination as a result of the gunshot wound.

## II.     PROCEDURAL HISTORY

On March 5, 2003, Plaintiff Sigley filed her complaint against the City of Parma Heights, Police Chief Michael Mlecik, Detective Wayne Mockler, and Detective Steve Scharschmidt in Ohio state court. Later all defendants were dismissed except for the City and Mockler. Sigley brought a 42 U.S.C. § 1983 claim alleging Fourth Amendment violations, and other state law claims, including negligent and intentional shooting, assault and battery, failure to train under the Fourth Amendment, and wrongful death. Plaintiff alleged that the Defendants, acting under the color of state law, violated Davis' Fourth Amendment right to be free from excessive and deadly force.

On April 2, 2003, the case was removed to federal court. After discovery closed, on August 9, 2004, Defendants filed a motion for summary judgment. On December 17, 2004, the district court granted Defendants' motion for summary judgment. The district court determined that the main issue was whether the police officers' actions were reasonable. The court acknowledged that "[i]t has taken days upon days to attempt to re-create some overall picture of the events as they happened that night. Witnesses, experts, and attorneys have all attempted to isolate literally hundreds of distinct factors, actions, thoughts, and assumptions that occurred during the relevant four and a half seconds." The court further found that "there was no evidence to contradict Detective Mockler's testimony that he believed he was in imminent danger of death at the time he fired his gun, or that the car was veering toward him when he decided to shoot." The court reasoned that "we do know that Mr. Davis' actions were reckless and dangerous and that he had every opportunity to submit to the police and avoid his own death." The court concluded that "no jury could find that Detective Mockler's fear of being hit and his consequential use of force were unreasonable." (J.A. at 835).

On December 23, 2004, Plaintiff filed a timely notice of appeal with this Court.

## III.    ANALYSIS

On appeal, Plaintiff argues that the district court improperly granted summary judgment and that there are genuine issues of material fact regarding her (1) Fourth Amendment excessive force claim; (2) qualified immunity claim; (3) failure to train claim; and (4) state law claims. In this case, there are several factual disputes critical to determining liability, which preclude Defendants' motion for summary judgment. Specifically, there are material factual disputes regarding: whether Mockler was chasing after Davis' car or the car was turning into him when he fired and whether Mockler had probable cause to believe that Davis posed a significant threat of death or serious physical injury to others.

This Court reviews the district court's granting of summary judgment *de novo*. This Court reviews the question of whether officers violated an arrestee's Fourth Amendment right to be free from excessive force *de novo*, applying the same summary judgment standard as the district court.

*Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004). This Court views the evidence in a light most favorable to the plaintiff. Under this standard, the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment. *Id*. at 491-492 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The Court must "not determine whether there is literally no evidence, but whether there is *any* fact upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed." *Id*. (emphasis added).

The summary judgment order of the district court should be affirmed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavit, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *Johnson v. Karnes*, 398 F.3d 969, 873 (6th Cir. 2005); *see also Sova v. City of Mount Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998) (stating that summary judgment is inappropriate where there are contentious factual disputes over the reasonableness of the use of deadly force).

In *Anderson*, the Supreme Court stated that "[a]s to materiality, the substantive law will identify which facts are material. Only disputes over fact that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." 477 U.S. at 248. The disputed evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

A.        **Fourth Amendment Excessive Force**

The Plaintiff alleges that the Defendants, acting under the color of state law, violated Davis' Fourth Amendment right to be free from an unreasonable seizure when they shot Davis in the back resulting in his death. In granting summary judgment for Mockler, the district court stated as a fact that "[Davis] turned the car into Detective Mocker's [sic] path either knowingly or recklessly." Dist. Ct. Op. at 15. On appeal, the Plaintiff contends that the district court misapplied the standard for summary judgment by accepting the Defendants' version of events over the Plaintiff's allegation that Davis was simply trying to escape and that Detective Mockler was chasing *after* him when he shot him in the back through the open driver's side window. The Defendants recognize that the district court's decision to grant summary judgment rested on its decision to accept as true Mockler's testimony that Davis' car was turning into him when he fired. However, they contend that summary judgment was nonetheless appropriate because the Plaintiff failed to produce any evidence to support its theory that Mockler was chasing after Davis when he fired. We disagree.

To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The second prong is satisfied. Accordingly, we must determine whether there is a factual dispute regarding whether there Davis was deprived of his Fourth Amendment right to be free from deadly excessive force.

The Supreme Court has stated that "*all* claims that law enforcement officers have used excessive force –deadly or not– in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen, should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Under this standard, the use of deadly force is only constitutionally reasonable if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

The Supreme Court has stated that:

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failure to apprehend him does not justify the use of deadly force to do so . . . . A police officer may not seize an unarmed, non-dangerous suspect by shooting him dead. . . .

*Garner*, 471 U.S. at 11-12; s*ee also Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005) (stating that "only in rare instances may an officer seize a suspect by use of deadly force.") (citation omitted).

This Court has used the following factors to evaluate whether an officer's actions are reasonable: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Dunigan*, 390 F.3d at 492 (quoting *Graham*, 490 U.S. at 396).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer of the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Further, "the calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split –second judgments– in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396-97. "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8-9 (stating that the question is whether the totality of the circumstances justifies a particular sort of seizure)).

The main issue is whether Davis posed an immediate threat to Mockler and the safety of others on the night of the shooting. It is clear from the record and the parties' briefs that each side has assigned different degrees of significance to various factors and has come to different conclusions as to what are reasonable inferences arising from the facts.

Plaintiff asserts that Mockler was chasing behind Davis' car and was in no immediate danger to himself or others. Plaintiff repeatedly asserts that the shooting of her son in the back creates a genuine issue of material fact regarding whether Mockler was in any immediate danger. In support of her argument, Plaintiff cites to Benedict's written and oral statements right after the shooting. After the shooting, Benedict admitted that he "saw Detective Mockler run at the driver's window and point his pistol down in the window and . . . heard a gunshot." (J.A. at 82). Benedict also testified that Davis drove in a manner to avoid officers on the scene. (J.A. at 98). He specifically stated that Davis "paused for about a second and then swerved off to the right and tried to get around a couple of the officers." (J.A. at 89).

Further, the Plaintiff alleges that Defendant Mockler was in a position of relative safety before he allegedly ran for the "safe harbor" of a chain link fence bordering the east side of the parking lot. The Plaintiff relies on *Estate of Starks v. Enyart*, 5 F.3d 230 (7th Cir. 1993) to support this argument. In *Enyart*, the Seventh Circuit held that the use of deadly force is constitutionally impermissible where the officer in question unreasonably creates the encounter that ostensibly permits its use. *Id*. In *Enyart*, the officer stepped in front of the car leaving the decedent no time to brake. The court stated that determining whether the officer placed himself in danger is a factual inquiry that should be resolved by the factfinder. The court found that "the threat of danger must be willful in order to warrant deadly force in response. . . . The police are not justified in using deadly force to stop involuntary action." *Id*. at 235. In this case, Benedict admitted in his written statement that he did not state that Davis was trying to run over Mockler at the time he fired his gun. (J.A. at 88). He specifically stated that "whoever it was . . . who pointed a weapon down and into

the window and when your heard a pop was running along the side of the Davis vehicle." In addition, he told the person taking his statement that on more than one occasion Davis attempted to swerve or dodge around the officers. (J.A. at 82).

Further, Mockler's post-incident police report describing his actions during the key time, differs from his subsequent deposition testimony. Specifically, Mockler's post-incident statement did not even mention that he ran to the fence at the edge of the parking lot for safety after Davis started to drive away. (J.A. at 356-357). This reason was only articulated at his deposition.

The Plaintiff also argues that the temporal sequence of events belies any significant threat of death or serious physical harm to Mockler. The whole event only lasted approximately 4.5 seconds. During this time, Mockler stated that first he ran back to his police car, and second he began to run toward the fence at the edge of the lot, until Davis turned his car toward him forcing him to jump and spin out of the way while simultaneously firing his gun at Davis. (J.A. at 137, 139, 144). The expert witness opinion found this inconsistent with the undisputed fact that only 4.5 seconds elapsed between those two events.[1] (J.A. at 810-812).

The Defendants refute the Plaintiff's factual assertions and argue that Mockler felt that Davis posed a threat to himself, other officers, and the public. In support of this position, Defendants attempt to contradict Benedict's written statement with his deposition testimony. In Benedict's deposition, he stated that while Davis was backing up, the police officers had to move or they would have been run over. (J.A. at 82). In addition, the Defendants assert that Davis placed the lives of the officers in the marked police cars in danger. Officers Walls and Kravanis were assigned to seal off the exits. After the incident, Mockler stated that he shot Davis because he was afraid that he would injure Walls and Kravanis.

In support of their argument, Defendants cite *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992). In *Smith*, police officers shot and killed the suspect as he was trying to avoid arrest after a long car chase. The Court found that because the decedent freed himself from road blocks during the chase that it was reasonable to assume that he would escape again. The Court stated that the decedent posed a deadly threat to the officer manning the roadblock as a car could be a deadly weapon. *Id.* at 347 (citing *United States v. Sanchez*, 914 F.3d 1355 (9th Cir. 1990)). The Defendants assert that this case is directly on point and justifies affirming the dismissal of the case.

Although the facts of *Freland* may be somewhat analogous to the instant case, this Court, does not give significant weight to *Freland* in evaluating the specific facts of this case. First, *Freland* is distinguishable in that the suspect ran a stop sign, exceeded speeds of 90 m.p.h. on public roadways, attempted to ram a police cruiser on two separate occasions, was chased more than two and one half miles, turned his car around on a residential lawn, and intentionally crashed into the front end of a police cruiser. *Id.* at 349. Here, it is not clear whether Davis accelerated to 30-40 m.p.h. before or after he was shot and whether he intended to injure Mockler or others on the scene.

The Supreme Court has stated that "because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case. . . ." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8-9); *see also Brosseau v. Haugen*, 125 S. Ct. 596, 600 (2004) (stating that analyzing fleeing vehicle cases is an area in which the result depends

---

[1]The Defendants argue that the expert evidence should be ignored because it was filed after the district court orally told the parties (an act not reflected in the record) that it intended to grant summary judgment for Defendants. However, the material was filed and it has not been stricken from the record, so it is properly considered on appeal. Although it would admittedly make this a closer case, we would reach the same conclusion even absent the expert evidence.

very much on the facts of the case).  Accordingly, this Court must evaluate the specific facts of this case and make a determination whether Mockler's actions were reasonable.

The conflicting views of the facts demonstrate that there are unresolved factual issues regarding whether Mockler was chasing after Davis' car or the car was turning into him when he fired.  Additionally, it is not clear whether Mockler had probable cause to believe that Davis posed a significant threat of death or serious physical injury to others.  Viewing the evidence in a light most favorable to the Plaintiff, these are disputed factual issues that preclude the granting of summary judgment.  *See Sova*, 142 F.3d at 903 (holding that where there are contentious factual disputes relating to the reasonableness of an officer's use of deadly force, the court is precluded from granting summary judgment for officers who shot Plaintiff's son).

Given the numerous factual disputes the district court improperly found that there was no evidence to contradict Detective Mockler's testimony that he believed he was in imminent danger of death at the time he fired his gun, or that the car was veering toward him when he decided to shoot.  The district court could only come to its conclusion by resolving all of the factual issues *against* the Plaintiff.  Thus, this type of determination should be reserved for the jury, not the district court.  Since the record may support Plaintiff's version of the facts, we remand this case to the district court for trial of Plaintiff's Fourth Amendment excessive force claim.

### B.          Qualified Immunity

On appeal, Defendants argue, and the dissent asserts, that even if a constitutional violation occurred, Officer Mockler is entitled to qualified immunity.  We disagree.  Although, the district court did not address this issue because qualified immunity presents a purely legal issue we will discuss this issue.  Viewing the facts in a light most favorable to the plaintiff, Mockler should not be granted qualified immunity.

Qualified immunity protects government officials who perform discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).  In determining whether qualified immunity is warranted, we employ a two-part test. "The first inquiry must be whether a constitutional right would have been violated on the facts alleged; second assuming the violation is established, the question whether the right was clearly established must be considered. . . ." *Smith v. Cupp*, 430 F.3d 766, 773 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).  The Plaintiff is obligated to present facts which, if true, would constitute a violation of clearly established law. *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987).

The primary issue is whether the constitutional right allegedly violated was defined at the appropriate level of specificity to be clearly established.  This is a legal issue.  The contours of the right must be clear enough to put an officer on notice that the actions he is taking are unlawful.  At the time of the shooting, "[u]se of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable." *Id*. at 776.  "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend his [sic] does not justify the use of deadly force to do so." *Id*.  Viewing the facts in a light most favorable to the plaintiff, the situation confronting Mockler was whether to shoot Davis, who did not intentionally create any harm to anyone on the scene, while attempting to flee.

The dissent relies on *Brosseau* to support the granting of summary judgment based on qualified immunity.  In *Brosseau*, the Court stated that the material facts taken in a light most favorable to the plaintiff showed that the shooting officer believed the suspect had a gun and was fearful for officers in the immediate area.  543 U.S. 194 (2004).  The Court held that when the

material facts identify official conduct within the "hazy border" between excessive and acceptable force, the qualified immunity privilege applies. *Id*.

The dissent frames the clearly established law by resolving all of the disputed facts against the Plaintiffs. Dissent Op. at 3. There is, however, evidence in the record which establishes that: (1) Benedict told another officer that Davis was trying to move or swerve around to dodge officers (J.A. at 89); (2) Benedict admitted that he never told any of the officers that Davis was trying to run any of them over (J.A. at 89); (3) at one point Mockler admitted that the physical danger or threat was to him and him alone (J.A. at 132); and (4) Officer Mehlman was not sure of Mockler firing the shot prevented him from being injured (J.A. at 228). In framing the clearly established right, this evidence must be used in a fashion most favorable to the Plaintiff.

Accordingly, viewing the facts in a light most favorable to the Plaintiff, Mockler was running behind Davis' car, out of danger, and Davis drove in a manner to avoid others on the scene in an attempt to flee. Accepting these facts as true, Mockler would have fair notice that shooting Davis in the back when he did not pose an immediate threat to other officers was unlawful. *See Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (clearly establishing that where the suspect poses no immediate threat to the officer and no threat to others the harm resulting from failing to apprehend his does justify the use of deadly force to do so"); *Sample v. Bailey*, 409 F.3d 689, 697 (6th Cir. 2005) (stating that "only in rare instances may an officer seize a suspect by use of deadly force."). Accordingly, based upon the facts taken in a light most favorable to the Plaintiff, Mockler is not entitled to qualified immunity as a matter of law.

### C.      Municipal Liability

The district court also dismissed Plaintiff's failure to train claims under § 1983. This Court has held that a plaintiff asserting a § 1983 claim on the basis of municipal custom or policy must identify the policy, connect the policy to the municipality itself, and show that the particular injury was incurred because of the execution of that policy. *Graham v. County of Washtenaw*, 358 F.3d 377 (6th Cir. 2004); *see also Monell v. New York City Dep't. of Social Servs.*, 436 U.S. 658 (1978) (stating that there must be a direct causal link between a county policy and the alleged constitutional violation such that the county's deliberate conduct can be deemed the moving force behind the violation).

The district court held that "[i]n the absence of a constitutional violation, there is no municipal liability under 42 U.S.C. § 1983. As Detective Mockler did not violate Mr. Davis' constitutional rights, the city cannot be vicariously liable for any such violation." (J.A. at 835) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Given our holding as to the constitutional issue in this case, we must reverse the district court, however, on this issue and remand for the court to determine whether there is a causal link between the City of Parma Heights actions and the alleged constitutional violation.

### D.      State Law Claims

The district court summarily dismissed Plaintiff's state law claims. Plaintiff did not appeal the dismissal of these claims. On appeal, in her initial brief she mentions in a footnote that the district court only addressed her state law claims. Further, in her reply brief, she states that she does not abandon her state law claims. Plaintiff's state law claims are not properly before this Court, thus we affirm the district court's dismissal of Plaintiff's state law claims.

## IV. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment and **REMAND** this case to the district court for further proceedings consistent with this opinion.

—————————

**DISSENT**

—————————

ALICE M. BATCHELDER, Circuit Judge, dissenting. I respectfully dissent. I would affirm summary judgment in favor of Officer Mockler because he was entitled to qualified immunity.

Qualified immunity protects an officer from suit when the officer "makes a decision that, even if constitutionally deficient, misapprehends the circumstances she confronted." *Brosseau v. Haugen*, 125 S. Ct. 596, 599 (2004). In *Saucier v. Katz*, the Supreme Court held that a lower court faced with a qualified immunity defense must first determine whether the plaintiff has asserted the violation of a constitutional right. 533 U.S. 194, 202 (2001). Sigley clearly has done so. "[T]he next, sequential step is to ask whether the right was clearly established." *Id.* A right is clearly established when the "contours" of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Id.* at 205. This is because "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* at 205.

Officer Mockler could not have known that his conduct was unlawful. Under *Tennessee v. Garner*, the use of deadly force is reasonable when an "officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." 471 U.S. 1, 3 (1985). The Supreme Court has addressed the question of when a suspect escaping in a vehicle poses such a threat. In *Brosseau v. Haugen*, the court held that an officer who fatally shot a suspect fleeing in a Jeep was entitled to qualified immunity. 125 S. Ct. at 600. The incident occurred after a foot chase. *Id.* at 598. Although the suspect had not yet driven forward, the officer fired one shot through the rear window on the driver's side and hit the suspect in the back. *Id.* The officer testified that she was concerned about the safety of others in the area. *Id.* When determining whether the officer had violated a clearly established Fourth Amendment right, the Court considered three circuit cases, two of which– *Estate of Starks* and *Smith v. Freland*– are cited by the majority in this case. *Id.* at 600. The court concluded that, based on those cases, the officer's conduct "fell in the 'hazy border between excessive and acceptable force.'" *Id.* (quoting *Saucier*, 533 U.S. at 206). Because the law did not clearly establish a Fourth Amendment right in favor of a "disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight," the officer was entitled to qualified immunity. *Id.*

This case is analogous to *Brosseau*. The defendants in this case have produced uncontroverted evidence that Davis posed a significant threat to the officers on the scene. During his deposition, Matthew Benedict testified that at the time Mockler shot Davis, "police were in danger." J.A. 82. Benedict also testified that if officers had not jumped out of the way of Davis' speeding vehicle, "they would have been run over." J.A. 82. In fact, Davis actually struck Officer Mehlman with his vehicle as Mehlman, with weapon drawn, warned Davis that he was under arrest. J.A. 216. Finally, Officer Mockler testified that had he not fired, he would have been killed. J.A. 133. Although the majority makes much of the statement given to police by Benedict immediately following the shooting, nothing in that statement contradicts Benedict's later testimony that Davis' reckless driving posed a significant threat of physical harm to the officers who were trying to apprehend him.

The majority notes that disputed facts preclude summary judgment if those facts could affect the outcome of the case. In the present matter, the outcome of the case centers on whether Officer

Mockler should reasonably have known that his conduct was unlawful. *See Saucier*, 533 U.S. at 202. Officer Mockler's conduct would have been unlawful if Davis had not posed "a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. at 3. Only in that instance should we overturn the district court's grant of summary judgment. The statements cited by the majority– that Benedict told officers that Davis was not trying to hit them, that Officer Mockler felt that only he was in danger and that Officer Mehlman was not convinced of the necessity of stopping Davis – are not dispositive. The excessive force inquiry, which dictates whether Officer Mockler violated a clearly established constitutional right, is one of objective reasonableness. *Graham v. Conner,* 490 U.S. 386, 397 (1989). Even if Davis intended to harm no one, and even if Officer Mockler shot Davis for the wrong reason, Mockler is nonetheless entitled to immunity if he and his fellow officers were in danger. Benedict's uncontroverted statement indicates that they were. Accordingly, I would **AFFIRM** the district court's grant of summary judgment in favor of Officer Mockler.