**NOT RECOMMENDED FOR PUBLICATION**

File Name: 05a0819n.06

Filed: October 6, 2005

**No. 04-4143**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

---

NICHOLAS SARGENT, individually and as administrator for the estate of DONALD J. SARGENT,

    Plaintiff-Appellant,

v.

CITY OF TOLEDO POLICE DEPARTMENT,

and

JOSEPH TAYLOR, City of Toledo Police Department,

    Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

---

Before: SILER and DAUGHTREY, Circuit Judges; MARBLEY, District Judge.[*]

**SILER**, Circuit Judge. Plaintiff Nicholas Sargent, individually and as administrator of the estate of Donald J. Sargent, instituted proceedings pursuant to 42 U.S.C. § 1983 against defendants for alleged violations of decedent's Fourth Amendment rights. The district court granted summary judgment in favor of all defendants, finding that no Fourth Amendment violation occurred, that Toledo Police Officer Joseph Taylor was protected by qualified immunity, and that the plaintiff did

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

not properly plead a § 1983 claim against the Toledo Police Department. For the following reasons, we **AFFIRM.**

## I.

In 2002, Toledo, Ohio police officers Taylor and Douglas Whatmore responded to a 911 call made by a neighbor of Donald J. Sargent that complained of a loud party and noise disturbance at Sargent's home. When Taylor and Whatmore arrived at the residence, they knocked on the front door at least twice, attempting to locate the owner. From their position, they could see juveniles sitting on the front porch and a young person "passed out" in the rear seat of a car parked in the driveway; they could hear a loud commotion and voices shouting inside the house. Whatmore proceeded to the back of the house, where he saw a number of juveniles running from the residence. He approached the back door, which was open, and peeked his head into the house, where he encountered Sargent alone in the kitchen. Whatmore asked Sargent what was going on and stepped inside. At that time, Taylor finished investigating the noises in the front of the house and walked to the rear of the residence to locate Whatmore. Finding Whatmore inside talking to Sargent, Taylor also entered the home.

Taylor asked Sargent for his identification. Sargent became irate. He informed the officers that he would go upstairs and locate his identification; Taylor told him not to leave to procure the identification. Sargent ignored Taylor's instruction and bolted out of the kitchen. Taylor and Whatmore immediately gave chase.

During the pursuit, Taylor commanded Sargent to stop. Sargent did not stop but continued running through the living room, up a flight of stairs, and down a hallway into a bedroom. He

slammed the bedroom door shut behind him. Taylor approached the bedroom door and kicked the center panel into the room.

After Taylor kicked the door, he observed Sargent getting up from a crouched position near the bed, as if he had been looking for something between the mattress and the box spring. Sargent then turned to Taylor, holding a gun in one hand. In response, Taylor shot once at Sargent, killing him.

Sargent's estate instituted proceedings under 42 U.S.C. § 1983 against the City of Toledo Police Department and Taylor for violations of decedent Sargent's Fourth Amendment rights. The district court granted summary judgment in favor of all defendants on grounds that no Fourth Amendment violation occurred, Officer Taylor was protected by qualified immunity, and Sargent failed to properly plead a § 1983 action against the Police Department.

**II.**

We review a grant of summary judgment *de novo*. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004). Summary judgment is appropriate when the evidence presents no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

We address Sargent's claims first with respect to Taylor, and second with respect to the City of Toledo Police Department. Sargent argues that Taylor violated Sargent's Fourth Amendment rights and therefore cannot claim the protection of immunity. Because the question of whether Taylor may claim qualified immunity necessarily turns on whether Taylor committed a constitutional violation, we analyze the two claims together. This court has recently approved the

following two-step inquiry to determine if qualified immunity is available: (1) whether the facts, taken in the light most favorable to the plaintiff, sufficiently establish a violation of a constitutional right; and (2) if the facts do suggest a violation, whether the right at issue was clearly established. *Greene v. Barber, 310 F.3d 889, 893 (6th Cir. 2002)* (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)).

**A.**

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, guarantees that the "right of the people to be secure in their persons, [and] houses . . . , against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. The "basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Ct. of San Francisco*, 387 U.S. 523, 528 (1967).

Three distinct events occurred that could give rise to a Fourth Amendment violation: (1) the officers' entry into Sargent's home; (2) the officers' conversation with Sargent in his kitchen and the subsequent pursuit; and (3) the use of deadly force to apprehend Sargent. Because different alleged violations of the Fourth Amendment are governed by different analytical frameworks, we analyze each claim individually. **1.**

Except in limited circumstances, "a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara*, 387 U.S. at 528-29. Furthermore, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). Thus, if officers enter a home

without either a warrant or consent, the government "must overcome the presumption that this entry was unreasonable." *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996).

Warrantless intrusions into the home, however, are justified in instances of "exigent circumstances." *Id*. Exigent circumstances arise when police are in hot pursuit of a fleeing felon, when the potential destruction of evidence is imminent, when necessary to prevent a suspect's escape, and when a risk of danger is posed to the police or others in the community. *Id.* at 1519. Yet the constitutional benchmark for Fourth Amendment searches and seizures is "reasonableness." Thus this court has extended the exigent circumstances exception, where reasonable, to allow police officers to enter a residence without a warrant in order to locate and abate an ongoing community nuisance. *Id.* at 1521. In *Rohrig*, we recognized that "the governmental interest in immediately abating an ongoing nuisance by quelling loud and disruptive noise in a residential neighborhood is sufficiently compelling to justify warrantless intrusions *under some circumstances*." *Id.* at 1522 (emphasis added). Discerning whether and when such circumstances exist involves balancing the claimant's reasonable expectation of privacy at the time of the intrusion with the governmental interest being served by the officers' entry. *See Katz v. United States*, 389 U.S. 347, 351 (1967) (delineating the bounds of one's reasonable expectation of privacy). Undertaking such an examination is unnecessary here, however, because we need not rest our conclusion that Taylor did not commit a Fourth Amendment violation on the exigent circumstances exception, finding as we do that no Fourth Amendment violation occurs when an officer follows a partner inside after the partner has already entered the home. Under those circumstances, the officer's entry is "reasonable."

We disagree with Sargent's argument that Taylor is vicariously liable for all of Whatmore's allegedly illegal actions. Certainly, supervisory officers who order a subordinate officer to violate a person's constitutional rights and non-supervisory officers present during a violation of person's civil rights who fail to stop the violation can be liable under § 1983. *Smith v. Heath*, 691 F.2d 220, 224-25 (6th Cir. 1982). Additionally, the supervising officer can neither encourage the specific act of misconduct nor otherwise directly participate in it. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Whether Whatmore committed a Fourth Amendment violation when he entered Sargent's home, Taylor is not vicariously liable for any alleged violation because there is no indication either that Taylor ordered Whatmore to enter the house illegally or that Taylor knew that Whatmore entered the home without consent. Thus, Taylor never ordered nor participated in a violation of Sargent's rights.

**2.**

In order to establish a valid Fourth Amendment claim against Taylor for engaging Sargent in conversation and for ordering him not to leave the room, Sargent must first show a seizure. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). *Hodari D.* requires that police either physically touched Sargent to restrain him or otherwise engaged in a show of authority that "in some way restrained [Sargent's] liberty," and that Sargent submitted to such show of authority. *Id.* at 625-26 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)). The Supreme Court has rejected the possibility that a seizure occurs when an officer commands a fleeing suspect to stop. *Id.* at 626. The facts here fail to establish that Sargent was seized. The fact that Sargent fled is proof that he never submitted

to the show of authority. *Id.* at 628. Thus, Sargent was not seized and suffered no Fourth Amendment injury when pursued.[1]

**3.**

There is no question that Sargent was seized when Taylor shot him in the bedroom. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985). However, Taylor can be liable under § 1983 only if his seizure of Sargent was objectively unreasonable for employing excessive force. *Ingram v. City of Columbus*, 185 F.3d 579, 596 (6th Cir. 1985). To determine whether excessive force was used, this court must perform a "careful balancing act of the 'nature and intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 394 (1989) (quoting *Garner*, 471 U.S. at 8).

In this case, the nature of the intrusion was severe. Sargent's " fundamental interest in his own life need not be elaborated upon." *Garner*, 471 U.S. at 9. This intrusion must be weighed against the state's interest. For this balancing, this court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Ingram*, 185 F.3d at 596 (internal citations omitted). Even viewing all facts in the light most favorable to Sargent, Taylor did not act unreasonably when he used deadly force against Sargent. Sargent was "attempting to evade" Officer Taylor's legitimate demands for identification by flight. He also appeared to be "an

---

[1]Additionally, there was no seizure when Officer Taylor drew his weapon and kicked in the closed door to the bedroom in which Sargent was hiding. At the time he kicked in the door, Taylor was in hot pursuit of a fleeing suspect, and exigent circumstances warranted his actions. *See United States v. Morgan*, 743 F.2d 1158, 1162 (6th Cir. 1984).

immediate threat to the safety of the officers or others." At the moment Taylor kicked in the door to Sargent's bedroom, he observed Sargent quickly turn toward him, gun in hand. Taylor stated that he fired at Sargent because he immediately feared for his own safety. Further, there is no evidence suggesting that Taylor shot Sargent for reasons other than self-defense. *See Garner*, 471 U.S. at 11 (sanctioning the use of deadly force where the officer has probable cause to believe that the suspect poses a threat of serious physical harm). Therefore, Taylor's action - motivated by the instinct to preserve his own life - sufficiently balances against the admittedly severe intrusion in this case to warrant a finding of reasonableness.

For the reasons given above, none of Taylor's actions constituted Fourth Amendment violations against Sargent. Because Taylor did not violate Sargent's Fourth Amendment rights, it is unnecessary to consider whether he violated any established law. Accordingly, he is afforded qualified immunity and the decision of the district court is affirmed.[2]

**B.**

The claims against the City of Toledo Police Department fail for a number of reasons. First, police departments are "merely sub-units of the municipalities they serve" and therefore are not

---

[2]Petitioner also asserts a claim against Taylor under Ohio law for wrongful death. Taylor is presumptively entitled to immunity, unless his actions were committed "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b); *see also Fabrey v. McDonald Village Police Dep't*, 639 N. E. 2d 31, 35 (Ohio 1994) (summary judgment appropriate where conduct that was "arguably negligent" does not rise to the level of wanton misconduct). An officer's conduct is wanton if he failed to "exercise any care whatsoever," *Fabrey*, 639 N. E. 2d at 35, and the record is void of any evidence that suggests Taylor failed to "exercise any care whatsoever." Because the only evidence suggesting that Taylor acted in a reckless manner was a proposed expert report from a police officer containing conclusory allegations of recklessness, no genuine issue of material fact surrounds the state law claim and summary judgment on the issue is affirmed.

proper § 1983 defendants. *Jones v. Marcum*, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002). Second, a municipality can be liable under § 1983 only if the municipality itself caused the constitutional deprivation, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); it cannot be held liable on the basis of *respondeat superior. Id.* The claim against the police department, resting solely on the doctrine of *respondeat superior*, thus fails as a matter of law. Finally, no cognizable *Monell* claim was pled in the complaint, a failure to train claim was pled improperly later in the proceedings . *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306-07 (6th Cir. 2000) (determining that plaintiff could not raise a § 1983 claim when only a *Bivens* action was alleged in the amended complaint).

Even if this court agreed to entertain the failure to train argument, it necessarily would fail on the merits. A municipality can be liable for its failure to train police officers if the municipality had a "deliberate indifference of the rights of its inhabitants" and such failure constituted the "moving force behind the constitutional violation." *Sova v. City of Mt. Pleasant*, 142 F. 3d 898, 904 (6th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 379 (1989), and *Monell*, 436 U.S. at 694) (internal quotation marks omitted). Moreover, allegations that "a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." *Id.* (citing *City of Canton*, 489 U.S. at 390-91).

**AFFIRMED**.