**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0799n.06
Filed: October 31, 2006

**No. 05-2325**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Monica DeMerrell, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| City of Cheboygan, et al., | ) | **O P I N I O N** |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:     **GIBBONS, MCKEAGUE, Circuit Judges; and FORESTER, District Judge.**[*]

**McKeague, Circuit Judge.**  Ronald White, a Cheboygan police officer, shot and killed Michael David DeMerrell.[1]  Plaintiff-Appellant, personal representative of Mr. DeMerrell's estate, sued Officer White, alleging unreasonable use of lethal force in violation of the Fourth Amendment, as well as the City of Cheboygan, the Cheboygan chief of police, and the Cheboygan department of public safety, alleging supervisory and municipal liability.  The district court granted summary judgment to Defendants-Appellees.  Plaintiff-Appellant filed a timely appeal, contending that the district court improperly granted summary judgment as to Officer White because Plaintiff-

---

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1] The proper spelling of Plaintiff-Appellant's last name is unclear.  The docket sheet as well as the district court order spell the name with one "r" at times and with two at other times.

Appellant's expert's report raised a factual dispute as to the reasonableness of Officer White's use

of deadly force, and as to the remaining defendants because of evidence of Officer White's alleged

lack of training and ongoing violations of Cheboygan citizens' constitutional rights. For the reasons

stated below, we affirm the district court's grant of summary judgment.

## I. BACKGROUND

Michael DeMerrell lived with his girlfriend, Aleta Siefert, in Cheboygan, Michigan.

Unable to work, DeMerrell received Social Security disability payments. DeMerrell was an

alcoholic, and although he had undergone inpatient rehabilitation for his alcoholism in January

2002, he was again drinking in February 2002, getting intoxicated every day, according to

Siefert. DeMerrell's drinking bothered her, and they had shouting matches over it.

On the morning of March 13, 2002, Keith LaDuke, DeMerrell's friend, visited DeMerrell

at DeMerrell's home and wanted to celebrate LaDuke's anniversary; accordingly, he brought a

case of beer with him, which he and DeMerrell began to drink. LaDuke left in the afternoon, and

Siefert noticed that DeMerrell was drunk. DeMerrell continued to drink, and he engaged in a

number of bizarre and dangerous activities, including driving a vehicle to the top of a pile of

wood that he had been hauling, shredding lampshades in the house with pruning shears, and

attempting to start a chainsaw while claiming that he wanted to destroy everything he had ever

made. During the course of these activities, Siefert attempted to stop him, told him that she did

not want to deal with him, and called him "stupid" and "an idiot" several times.

After this confrontation, Siefert felt something strange on her back and turned to find

DeMerrell coming at her with a knife. Siefert stated that DeMerrell stabbed her in the back with

the knife; he also stabbed her in the arm when he again came at her with the knife and she raised her arm in defense. Siefert managed to knock DeMerrell back, secure the knife, and run out of the house to safety. Once outside, she sought help from neighbors, knocking on several doors; however, DeMerrell shouted after her that if she did not return, he would hurt Julie, DeMerrell's five year old granddaughter who lived with the two of them, and over whom Siefert had legal guardianship. Siefert eventually arrived at the house of a neighbor who called the police, at which time Siefert told the officer that she had been attacked and stabbed and that DeMerrell had threatened Julie.

Officers Ronald White and Ron Hartman arrived at the neighbor's house around 10 p.m. Officer White saw a lot of blood as well as the wound on Siefert's arm, and when he asked her who did this to her, Siefert responded that it was DeMerrell. Officer White testified that he had about half a dozen previous contacts with DeMerrell and that DeMerrell had been drinking on the majority of those occasions.

Officer White drove his police sport utility vehicle to DeMerrell's house, parked in the driveway, and looked through the screen door at the front of the house, which was the general entrance. Officer White saw Julie next to DeMerrell, and DeMerrell was holding a gun. Officer White advised Troopers Don Bolen and Michael Pionk, other officers who had joined him at DeMerrell's residence, of this, and he retreated to the rear of his SUV after securing the shotgun that was issued to the police vehicle. DeMerrell came outside with his weapon, at which time Officer White further retreated to a position behind another police vehicle that was parked in the street.

At this point, Officer White attempted to negotiate with DeMerrell, telling him to put the weapon down, that it was not worth it, and that there was a young child crying on the porch, yet DeMerrell ignored the commands. Officer White continuously attempted to negotiate with DeMerrell, but DeMerrell only taunted the officers, telling them that they were not taking him to jail, that they were "pussies" who "didn't have the balls to do it," and saying, "Come on, shoot me." (JA 389-90). Officer White testified that during this time DeMerrell became more agitated and was waving the weapon in the officers' direction. Officer White further testified that finally DeMerrell raised the weapon, pointing it in the officers' direction, and took a few steps toward the officers, at which time Officer White shot DeMerrell, killing him. Officer White was the only officer on the scene who fired at DeMerrell, and it turned out that DeMerrell was holding a pellet gun.

Only Officer White was deposed. Other officers submitted copies of their incident reports. Several officers and a neighbor stated that Officer White attempted to negotiate with DeMerrell, that DeMerrell waved the gun around in the direction of the officers or directly pointed it at the officers, and that DeMerrell advanced on the officers just prior to being shot. Additionally, Trooper Bolen stated that although he did not discharge his weapon, he raised it and pointed it at DeMerrell, and he applied trigger pressure to discharge the weapon when Officer White fired. Sergeant Michael Brege said that when he saw DeMerrell begin to lift the weapon in the direction of the officers, he began to squeeze the trigger of his own weapon. Deputy Brenda Chimner stated that she realized she needed to shoot DeMerrell because he was closing in on the officers and was not listening to their commands.

Plaintiff-Appellant filed a complaint on August 20, 2004, alleging violations of the Michigan constitution against all defendants, assault and battery under Michigan law against Officer White, wrongful death under Michigan law against Defendants-Appellees, and a violation of 42 U.S.C. § 1983 and the Fourth Amendment of the federal Constitution against Defendants-Appellees. Plaintiff-Appellant and Defendants-Appellees both hired experts who submitted reports. Plaintiff-Appellant's expert concluded that DeMerrell did not pose an immediate threat to Officer White or to the other officers, and therefore Officer White's use of deadly force was improper and unnecessary. Defendants-Appellees' expert concluded that Officer White used objectively reasonable force when he shot DeMerrell.

Defendants-Appellees moved for summary judgment, asserting that the claims are precluded by the defense of qualified immunity under federal law and governmental liability under Michigan law and that liability cannot lie against Cheboygan and Jones, either under *respondeat superior* or under any other theory. The district court granted the motion, concluding that the claim against Officer White was barred by qualified immunity, the claim against Jones did not present a genuine issue of material fact because Plaintiff-Appellant did not present any evidence that Jones had any role in Officer White's shooting of DeMerrell, and the claim against the City of Cheboygan had no basis because there was no constitutional deprivation under § 1983. As a result, the court declined to exercise supplemental jurisdiction over Plaintiff-Appellant's state law claims.

## II. ANALYSIS

### A. Standard of Review

This court reviews the district court's grant of summary judgment *de novo*. *Sigley v. City of Parma Heights*, 437 F.3d 527, 532 (6th Cir. 2006); *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005); *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734; *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004). The court deciding a motion for summary judgment must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005); *Johnson*, 398 F.3d at 873; *Daniels*, 396 F.3d at 734. However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter*, 385 F.3d at 689-90; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). To be "material," the facts must be such that they might affect the outcome of the suit, and to be "genuine," the dispute must concern evidence upon which the jury could *reasonably* return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248, 252 (emphasis added). Accordingly, the non-moving party must present significant probative evidence in order to defeat the summary judgment motion. *Id.* at 249-50; *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003).

**B. Summary Judgment to Officer White Based on Qualified Immunity**

Plaintiff-Appellant argues that she presented evidence to create a factual dispute regarding the objective reasonableness of Officer White's use of deadly force. Therefore, according to DeMerrell's estate, the district court's grant of summary judgment to Officer White on the grounds of qualified immunity was improper.

To prevail on a 42 U.S.C. § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a right secured by the Constitution or the laws of the United States. *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005). As stated above, Plaintiff-Appellant alleges unreasonable use of lethal force in violation of the Fourth Amendment. For there to be an excessive force claim that is cognizable under the Fourth Amendment, a seizure must occur. *Dunigan v. Noble*, 390 F.3d 486, 492 (6th Cir. 2004). The Supreme Court has held that apprehension by use of deadly force constitutes a seizure for Fourth Amendment purposes. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

"Qualified immunity is a government official's 'entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). It is a defense designed to aid the effective functioning of government, namely by recognizing that police officers may err but that "it is better to risk some error and possible injury from such error than not to decide or act at all." *Dunigan*, 390 F.3d at 490-91 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 242 (1974)). Accordingly, the central purpose of qualified immunity is to protect officers "from undue interference with their duties and from

potentially disabling threats of liability." *Sample*, 409 F.3d at 695 (quoting *Elder v. Holloway*, 510 U.S. 510, 514 (1994)).

The Supreme Court has delineated a two-part test in order to determine the applicability of the qualified immunity defense in the context of an excessive force claim.[2] *Saucier*, 533 U.S. at 201-02. The threshold question is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 201. The Court specifically held that in excessive force cases, the Fourth Amendment is violated if the force applied is excessive under the objective reasonableness standard. *Id.* (citing *Graham v. Connor*, 490 U.S. 386 (1989)).

In *Graham*, the Court held that assessing objective reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. The Court also held that reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"; accordingly, the calculus must take into account "the fact that police officers are often forced to make split-second

---

[2] Some decisions by this Circuit hold that the qualified immunity test is a three-part test. *See, e.g.*, *Sample*, 409 F.3d at 696; *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Other decisions hold that the test is a two-part test. *See, e.g.*, *Dunigan*, 390 F.3d at 491; *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 172 (6th Cir. 2004). The tests are essentially the same, originally delineated by *Saucier*, 533 U.S. at 201. Since the analysis in this case does not proceed beyond the first part of the test, the other parts need not be considered; accordingly, no opinion is given regarding the superiority of either approach. *See Saucier*, 533 U.S. at 201; *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005); *Dunigan*, 390 F.3d at 495.

judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of

force that is necessary in a particular situation." *Id.* at 396-97. Important for this case, this

Circuit has held that

> [a]lthough the Fourth Amendment 'reasonableness' inquiry is largely fact-driven,
> summary judgment for defendant public servants founded in qualified immunity is
> nonetheless appropriate when the undisputed material facts, or the plaintiff's
> version of disputed material facts, demonstrate that a hypothetical reasonable
> officer would not have known that his actions, under the circumstances, were
> objectively unreasonable.

*Scott v. Clay County*, 205 F.3d 867, 877 (6th Cir. 2000) (citing *Sova v. City of Mt. Pleasant*, 142

F.3d 898, 902-03 (6th Cir. 1998)).

If the answer to the first part of the *Saucier* inquiry is in the affirmative, the second

question is whether the right was clearly established. 533 U.S. at 201. The Supreme Court held

that the inquiry on this question is "whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted." *Id.* at 202.

The district court held that Officer White was entitled to qualified immunity, applying the

preceding authorities in conducting its analysis. In disposing of Plaintiff's claim at the first step

of the *Saucier* analysis, the court noted that "all officers observed DeMerrell advance toward

them with a gun pointed," and at least one other officer was also ready to shoot DeMerrell. (JA

45-46). The court thus found "overwhelming evidence of DeMerrell's threatening conduct in the

record" and that "Officer White was confronted with a dangerous, volatile situation involving an

intoxicated, armed, aggressive suspect that, it is uncontested, was advancing on the police and

defying commands to stand down." (JA 46). The court pointed out that simply because one

witness said that DeMerrell was waving his hands about and did not point the gun at police,[3] a fact issue did not exist because that statement did not contradict Officer White's testimony and the other officers' statements that DeMerrell advanced toward the officers with his gun pointed in their direction. Thus, the court held, "plaintiff has not shown that Officer White's actions were unreasonable or that the use of deadly force in this case contravened the Fourth Amendment." (JA 45-46). Accordingly, summary judgment was granted as to Officer White.

On appeal, Plaintiff-Appellant raises several points in support of her claim that summary judgment based on qualified immunity was improper. First, she claims that the instant case is similar to other cases that denied summary judgment. Second, she contends that the district court erred in ignoring the conclusions of her expert report that DeMerrell did not pose an immediate threat to the officers; hence, she argues the expert's report created a factual dispute regarding objective reasonableness. Third, she argues that the district court failed to address Officer White's actions prior to the shooting in determining whether he acted in an objectively reasonable manner. Finally, she claims that the distance between DeMerrell and the officers at the moment of the shooting shows that Officer White did not act in an objectively reasonable manner.

---

[3] The language used by the district court is slightly confusing; the opinion states that "Patrick Nichols stated that DeMerrell . . . did not point the gun at police." However, in Nichols' actual statement, he makes no affirmative statement that DeMerrell did not point the gun at the police or in their direction; rather, he stated that "DeMerrell was waving this gun around and in the direction of the police cars and police officers." Hence, the court's correct conclusion that "Nichols' statement cannot fairly be read as contradicting Officer White's testimony and the statements of the other officers."

### 1. Applicable Sixth Circuit Qualified Immunity Cases

Two cases from this Circuit that are on point with the instant case found the officers'

actions objectively reasonable.[4] In *Rhodes v. McDannel*, this Circuit, holding that the officer's

use of deadly force was justified, affirmed summary judgment in a case in which an officer

responding to a domestic disturbance report shot and killed James West, who had advanced on

the officers with a raised machete. 945 F.2d 117, 118-19 (6th Cir. 1991) (per curiam). In

*Rhodes*, the uncontroverted evidence was that West advanced on officers with a motion to inflict

harm, namely by way of a raised machete. *Id.* at 120. In the instant case the uncontroverted

evidence is that DeMerrell advanced on officers with his gun pointed at them, thus also

advancing on officers with a motion to inflict harm. Additionally, in the instant case Officer

White repeatedly attempted to negotiate with DeMerrell and tried to convince him to drop the

weapon, but to no avail; thus, officers were even more patient than were the officers in *Rhodes*,

who only repeatedly warned West to halt. *Id.* Finally, although Plaintiff-Appellant makes much

of the fact that Officer White was the only officer to fire his weapon at DeMerrell, it should be

---

[4] Plaintiff-Appellant cites two cases in support of her claim that summary judgment was improperly granted, *Brandenburg v. Cureton*, 882 F.2d 211 (6th Cir. 1989), and *Sigley v. City of Parma Heights*, 437 F.3d 527 (6th Cir. 2006). However, these cases do nothing to support Plaintiff-Appellant's argument, as they are both easily distinguishable from the instant case for several reasons. In *Brandenburg*, for instance, unlike the instant case there was actual physical evidence that Brandenburg did not have his finger on the trigger of the rifle and was not aiming it at the officers when he was shot. 882 F.2d at 215. *Sigley* is distinguishable from the instant case, among other reasons, because there were actual conflicting views of fact; namely, an officer stated that the car the decedent was driving was "swerving into him," whereas another witness testified that the officer was running alongside the vehicle and that the officer pointed his weapon down and into the window. 437 F.3d at 531. Additionally, an autopsy conducted on the suspect revealed that he was shot in his mid-back, just left of the midline. *Id.*

noted that summary judgment was affirmed in *Rhodes* even though the facts indicate that only one officer fired his weapon at West. *Id.* at 118.

*Boyd v. Baeppler* is also an analogous case from this Circuit that compels the conclusion to uphold the district court's decision in the instant case. 215 F.3d 594 (6th Cir. 2000). In *Boyd*, Officers Baeppler and Wilsman responded to the report of an alleged shooting, and they found Boyd, who met the description, in the general area. *Id.* at 597-98. The officers saw Boyd had a gun in his hand, and they exited their car, ordering him to stop and identifying themselves as police. *Id.* at 598. Officers Wilsman and Baeppler testified that Boyd continued to flee, that Baeppler fired at Boyd, that Boyd responded by turning and pointing his weapon at Wilsman, that Wilsman fired one shot that downed Boyd, that Boyd lifted his torso and turned to point his weapon at Wilsman, and that Baeppler fired seven more shots at Boyd until he dropped his weapon. *Id.* at 603. Boyd died, and his estate sued the officers under § 1983; although the district court denied the officers' motion for summary judgment, this Circuit reversed, granting the qualified immunity claims of the officers. *Id.* at 604.

In *Boyd*, the only eye witnesses to the shooting were the two officers, and they told the same consistent story, just as in the instant action; yet the uncontroverted testimony in the instant case has even more assurances of reliability, as a neighbor has corroborated the officers' testimony and statements. The *Boyd* court noted that the only inconsistent evidence was a report by plaintiff's expert that concluded, after reviewing the state's autopsy report, Boyd *might not* have been able to turn and point his weapon after Wilsman's shot. *Id.* at 603. However, this Circuit did not accept the argument that such speculative evidence was sufficient to create a

genuine issue of material fact. *Id.* Much like *Boyd*, the only inconsistent evidence in the instant case is Plaintiff-Appellant's expert report. Indeed, like the expert in *Boyd*, the expert in the instant case solely relied on secondary evidence produced by the state. What makes the report in the present case even more unreliable, however, is the fact that the expert's premises are refuted by the facts in the record. Accordingly, if the report in *Boyd* was not sufficient to raise a genuine issue of material fact, then the report in the instant case surely is not.

Case law from this Circuit compels the conclusion that the district court properly granted Officer White's summary judgment motion on the basis of qualified immunity in the instant case. The cases that Plaintiff-Appellant cites in support of her argument contain dissimilar factual scenarios that defeat the analogies she attempts to make, whereas other cases from this Circuit dictate that the granting of summary judgment to Officer White must be affirmed.

### 2. Plaintiff-Appellant's Expert Report

Plaintiff-Appellant on appeal repeatedly contends that the district court ignored her expert's opinion that Officer White acted in an objectively unreasonable manner; according to Plaintiff-Appellant, this opinion creates a genuine issue of material fact that precludes summary judgment. For several reasons, she is incorrect.

First, the expert report largely supports the position of Defendants-Appellees as well as the opinion of the district court. Indeed, the expert contends, "[I]t is my opinion that had Mr. DeMerell [sic] made any specific forward movement at or toward Officer White or any other officer at the scene or made a direct threat with his handgun to any officer, deadly force would have been justified." (JA 425). Yet the condition in that sentence was satisfied: uncontroverted

statements indicate that DeMerrell took several steps in the direction of the officers prior to being shot and that DeMerrell wildly waved the gun or pointed it at the officers just before he was shot by Officer White. Accordingly, to the extent that taking several steps in the directions of the officer constitutes a "specific forward movement" and waving a gun in the officers direction or pointing it at them constitutes a "direct threat" that DeMerrell made with his gun, even Plaintiff-Appellant's expert must conclude, by his own words, that Officer White was justified in using deadly force.

Second, the expert opinion that Plaintiff-Appellant relies upon merely expressed a legal conclusion; accordingly, the district court properly ignored it. Indeed, this Circuit has held under Federal Rule of Evidence 704(a) that such testimony by an expert is improper. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). In *Berry*, this Circuit held that "[w]hen the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that *suggest* the answer to the ultimate issue or that give the jury all the information from *which it can draw inferences* as to the ultimate issue." *Id.* (emphasis added).

In the instant case, Plaintiff-Appellant's expert testified as to a legal conclusion because he stated that "it was objectively unreasonable for Officer White to shoot Mr. DeMerrell." (JA 430). As stated previously, objective reasonableness is the precise legal standard of *Graham* to be used in the qualified immunity inquiry of *Saucier*. *See Saucier*, 533 U.S. at 201; *Graham*, 490 U.S. at 396. Additionally, Plaintiff-Appellant's expert's opinion further states that "a reasonable officer on the scene would not have concluded at the time that there existed probable cause that Mr. DeMerrell posed a significant threat of death or serious physical injury to the officer or

others." (JA 430). This testimony also expresses a legal conclusion, going beyond "stating opinions that suggest the answer to the ultimate issue." *Berry*, 25 F.3d at 1353. Still other conclusions by Plaintiff-Appellant's expert were improper legal conclusions, namely that the "use of deadly force by [Officer White] was improper and unnecessary." *See Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (precluding expert testimony in a § 1983 excessive force case that an officer's conduct was not "justified under the circumstances," not "warranted under the circumstances," and "totally improper").

Third, even if the expert's report had not improperly stated legal conclusions, it still does not change the result that there is no genuine issue of material fact in the instant case because the report consists entirely of premises that contradict the uncontroverted facts. *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000) ("[A]n expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known.") (quoting *Pomella v. Regency Coach Lines, Ltd.*, 899 F. Supp. 335, 342 (E.D. Mich. 1995)); *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999) ("Expert testimony, however, is inadmissible when the facts upon which the expert bases his testimony contradict the evidence."). For instance, in concluding that Officer White's actions were improper and unnecessary, the expert claims that "[n]owhere in any of the attached statements or documents are there reports of Mr. DeMerrell taking a proscribed path at or towards Officer White that justified him discharging his shotgun into Mr. DeMerrell." (JA 425). This simply is not true. Indeed, uncontroverted testimony, statements by several police officers, and a statement by a neighbor all state precisely the opposite, namely that DeMerrell took several

steps in the direction of the officers just prior to being shot. In addition, those same statements indicate that DeMerrell continuously ignored officer commands to put his gun down, wildly waved the gun in the officers' direction, and pointed the gun at the officers prior to being shot. The expert report of Plaintiff-Appellants, however, ignores all of these facts.

In light of the report's support of the district court's opinion when the uncontroverted facts are applied to the report's statements, its refusal to acknowledge the uncontroverted facts, and its insistence on stating legal conclusions that simply contradict and avoid reference to these facts, it cannot be said that the district court erred in ignoring Plaintiff-Appellant's expert report or that the report creates a genuine issue of material fact in regards to whether Officer White acted in an objectively reasonable manner that would defeat the granting of the summary judgment motion on the basis of qualified immunity.

### 3. Officer White's Actions Prior to the Shooting

Plaintiff-Appellant also makes much of the fact that Officer White pulled his police SUV directly into DeMerrell's driveway. This fact, according to Plaintiff-Appellant's expert, is contrary to standard high-risk response tactics. Accordingly, Plaintiff-Appellant argues, Officer White acted in an objectively unreasonable manner; Plaintiff-Appellant also claimed at oral argument that Officer White's pulling into the driveway escalated the situation. In support, Plaintiff-Appellant cites *Yates v. City of Cleveland*, a § 1983 case arising out of a police shooting in which this Circuit affirmed the denial of summary judgment because the officer entered a dark hallway at a private residence at approximately 2:45 a.m. without identifying himself and without shining a flashlight. 941 F.2d 444, 447 (6th Cir. 1991). The court held that such actions on the

part of the officer were not objectively reasonable; indeed, the plaintiff found the officer in the hallway and thought the officer was an intruder, which caused him to knock the officer back through the door and the officer to fire his weapon in response. *Id.* at 445, 447.

Plaintiff-Appellant's reliance on this case is misplaced for two reasons. First, *Yates* is inapposite to the instant case. Indeed, this Circuit has held, "[W]e must analyze the events surrounding [the § 1983 claimant's] death in temporal segments. . . . The 'segmenting' rules of *Boyd* and *Dickerson* divided the analysis of possible erroneous actions taken by the officers prior to shots being fired." *Claybrook v. Birchwell*, 274 F.3d 1098, 1104 (6th Cir. 2001) (citing *Boyd v. Baeppler*, 215 F.3d 594 (6th Cir. 2000); *Dickerson v. McClellan*, 101 F.3d 1151 (6th Cir. 1996)). Accordingly, even if Officer White violated tactical methods by pulling his SUV into DeMerrell's driveway, that error occurred well before the shot was fired. Indeed, after pulling his SUV into the driveway, Officer White went up to the front door of DeMerrell's residence, retreated behind the SUV, retreated further behind one of the vehicles in the street, and continuously engaged in negotiations with DeMerrell all before DeMerrell advanced on the officers with his weapon pointed at them. Accordingly, the error involving the SUV, if any, occurred prior to the shooting segment; hence it does not factor into the question of the reasonableness of Officer White's actions.

*Yates* is also inapplicable because it is factually dissimilar from the instant case. In *Yates*, the officer's actions were the cause of the scuffle that included the shooting of the victim; indeed, the officer intentionally entered the dark hallway of a private residence at 2:45 a.m. and did not in any way identify himself, conduct that the court characterized as "more than merely negligent."

941 F.2d at 447. When the victim found the officer, he reasonably thought the officer was an intruder, and the officer was knocked through the door, which caused him to fire his weapon in response. *Id.* at 442. In the instant case, there is no such causal connection, and Plaintiff-Appellant fails to state why simply pulling into a person's driveway made Officer White's conduct objectively unreasonable. DeMerrell could not have been confused regarding the officers' identity like the victim was in *Yates*, because there were patrol vehicles present and Officer White engaged in continuous negotiations with DeMerrell to put his weapon down. Even if Officer White erred in pulling directly into DeMerrell's driveway, the error could be characterized as negligent at most, and the *Yates* court held that "mere negligence may not serve as a basis for a section 1983 claim." 941 F.2d at 447. Accordingly, this fact does nothing to support Plaintiff-Appellant's claim that Officer White acted in an objectively unreasonable manner.

Likewise, we fail to see how Officer White pulling into the driveway escalated the situation, as Plaintiff-Appellant claims. Indeed, that event happened well before the shot was fired: after pulling his SUV into the driveway, Officer White approached the front door of DeMerrell's residence, retreated behind the SUV, retreated further behind one of the vehicles in the street, and continuously engaged in negotiations with DeMerrell all before DeMerrell advanced on the officers with his weapon pointed at them. It is clear, absent any evidence to the contrary, that any "escalation" due to Officer White's pulling into the driveway dissipated once the officers repeatedly attempted to peacefully resolve the situation, including retreating into the

street and continuously negotiating with DeMerrell. Furthermore, Plaintiff-Appellant failed to assert any supporting authority for this escalation claim that he raised at oral argument.

**4. Distance Between Officer White and DeMerrell**

Plaintiff-Appellant finally argues that Officer White did not act in an objectively reasonable manner because the two were 25-30 feet apart, a distance that was not close enough to pose an imminent threat to Officer White according to Plaintiff-Appellant's expert. This point requires little discussion. It matters little whether the distance between Officer White and DeMerrell was 25-30 feet or 15-20 feet because the uncontroverted testimony and statements from officers and a neighbor place DeMerrell on a direct path approaching the officers. Moreover, several officers stated that DeMerrell aimed his gun at the officers at the time he was shot. In other cases where this Circuit has held that officers are entitled to qualified immunity when a gun is pointed at them, any discussion regarding the importance of a difference of ten feet is notably absent. *See Boyd*, 215 F.3d at 604; *Sargent v. City of Toledo Police Dept.*, 150 F. App'x 470, 475 (6th Cir. 2006) (unpublished); *Burnette v. Gee*, 137 F. App'x 806, 812 (6th Cir. 2005) (unpublished).

In whole, the district court correctly applied *Saucier* and *Graham* in granting summary judgment to Officer White on the basis of qualified immunity. The district court thoroughly reviewed the record and found that there was "overwhelming evidence of DeMerrell's threatening conduct" and that "Officer White was confronted with a dangerous, volatile situation involving an intoxicated, armed, aggressive suspect that, it is uncontested, was advancing on the police and defying commands to stand down." Accordingly, the court held, "plaintiff has not

shown that Officer White's actions were unreasonable or that the use of deadly force in this case contravened the Fourth Amendment." (JA 45-46). Sixth Circuit precedent does nothing but reinforce the district court's conclusion. Accordingly, summary judgment was properly granted as to Officer White.

## C.  City of Cheboygan and Police Chief Jones

Plaintiff-Appellant additionally argues that the district court erred in granting summary judgment to the City of Cheboygan and Police Chief Jones because she produced evidence of Officer White's lack of training and Officer White's employers' disregard of what Plaintiff-Appellant refers to as "White's prior ongoing violations of Cheboygan citizens' constitutional rights." Defendants-Appellees argue that such a claim cannot exist absent a constitutional violation on the part of Officer White. Defendants-Appellees' position is supported by case law, and the point necessitates little discussion.

### 1.  City of Cheboygan

Regarding municipal liability under § 1983, the Supreme Court has held that if the officer inflicted no constitutional injury on a person, then it is "inconceivable" that the city could be liable to the person. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam). Accordingly, because Officer White is entitled to summary judgment because there was no constitutional violation, Plaintiff-Appellant's claim against the city must also fail. *Id.* ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); *Scott*, 205 F.3d at 879 ("[O]ur conclusion that no officer-

defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well."). Accordingly, the district court properly dismissed Plaintiff-Appellant's claim against the City of Cheboygan.

**2. Police Chief Jones**

Regarding supervisory liability under § 1983, this Circuit has held that "[a]t a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved knowingly acquiesced in the *unconstitutional conduct* of the *offending* subordinate." *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005) (emphasis added). This rule finds support in other circuits as well. *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (holding that there are two theories of supervisory liability, both requiring a violation of constitutional rights); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 902 (1st Cir. 1988) (setting forth a two-part test for supervisory liability, one part of which requires a constitutional violation). Accordingly, if there is no unconstitutional conduct by an offending subordinate, as in the instant case, a plaintiff cannot make the required showing. Therefore, the district court properly dismissed Plaintiff-Appellant's claim against Police Chief Jones as well.

**III. CONCLUSION**

For the foregoing reasons, we AFFIRM the orders of the district court.